consequences of his own wrong. Where, however, as in this case, the unfair competition consisted in the use of the defendant's own name, "Rowley," upon letter heads and advertising circulars, in such manner as would make it likely to give the impression that the defendant was the original manufacturer of the "Rowley" leg, there is not the same reason for supposing that each article is sold by reason of unfair competition, as in the cases where trade-marks proper are affixed to each article offered for sale.

[2] Courts will refrain from ordering an account of profits where an injunction will satisfy the substantial equities of the case. Where, however, an accounting of profits has been ordered, the master, in executing the reference under such an order, should conform to the general rule as above stated. His duties are ministerial and not judicial. In the present case, the master has taken a different view of the duty imposed upon him by the order of reference, and held that no profits should be taken into the account, except upon those sales which the complainant was able to show had been effected by reason of the deception practiced by the defendant.

If the general rule as to an accounting for profits was thought to bear hardly upon the defendant, application should have been made to the court upon a proper showing for a modification of its decree in this respect. The court below has, however, overruled the exceptions to the master's report and has thus practically amended its own decree.

As we are of opinion that the injunction decreed by the court below satisfied the equities of the case, and does justice between the parties, and gives the complainant, under the circumstances, all the relief to which he is entitled, we abstain from interfering with the action of the court below and affirm the order appealed from.

---

## JACOBS v. BALLANTINE BREWERIES CO.

### In re KELIHER.

(Circuit Court of Appeals, First Circuit. February 14, 1912.)

No. 949.

1. BANKRUPTCY (§ 314*)—CLAIMS—SALE—ILLEGALITY—INTOXICATING LIQUORS —BURDEN OF PROOF.

One who pleads illegality of the contract as a defense against an action for the price of intoxicating liquors bought by and delivered to him has the burden of proving that the sales were in fact illegal by the law of the place where they were made, which burden rests on the buyer's trustee in bankruptcy, objecting to a claim for liquors sold to the bankrupt on the ground that the sale was illegal.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.*]

2. INTOXICATING LIQUORS (§ 329*)—LICENSE—FORM—PERSON LICENSED—DESCRIPTION.

Rev. Laws Mass. c. 100, § 1, provides that no person shall sell intoxicating liquors without a license; and section 10 states how licenses may be granted, and after providing in what cities and towns and by

whom they may be granted, and how every license shall be signed, and for the record thereof, directs that it shall name the person licensed. It was the custom of the licensing board of Boston to insert in licenses to corporations the names of two or three individuals with whom it might more conveniently deal, and in pursuance of this policy, on the application for license by the "Ballantine Breweries Company," a license was issued to "Charles Bradley and Frank H. Adams as Ballantine Breweries Company"; Bradley being the president and Adams an employé of the corporation. *Held*, that such license did not authorize the individuals to sell liquor independent of the corporation, and hence sales made by the corporation were not illegal, as unauthorized.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 474–481; Dec. Dig. § 329.*]

Appeal from the District Court of the United States for the District of Massachusetts.

In the matter of bankruptcy proceedings of William J. Keliher. A claim of the Ballantine Breweries Company for intoxicating liquors furnished to the bankrupt having been objected to by the trustee, and such objections having been overruled, a petition for review was heard by the District Court, where the referee's order was affirmed, from which the trustee appealed.   Affirmed on opinion of the District Court.

The opinion of the District Court, per Dodge, District Judge, on the petition for review of the referee's order allowing the claim of the Ballantine Breweries Company, was as follows:

The creditor is a corporation under the laws of Massachusetts. Its proof of claim, sworn to November 9, 1909, and filed with the referee November 16, 1909, is for merchandise delivered to the bankrupt. Schedules are annexed which show the merchandise to have been beer and ale delivered to the bankrupt on various dates between January 1, 1908, and May 1, 1909. These deliveries appear to have been made upon a running account, items of cash paid from time to time by the bankrupt are credited, and the balance shown as due at the time of proof for beer is $120, for ale $1,147.50, which, with an item of $35 cash paid for insurance premium on the bankrupt's account, makes the total amount for which the claim was proved.

Neither the delivery of the merchandise nor the amount chargeable therefor is in dispute. The only ground for disallowance urged by the trustee is that the sales of intoxicating liquors upon which the claim is based were illegal.

[1] He who sets up illegality of the contract as his defense against an action for the price of intoxicating liquors bought by and delivered to him has the burden of proving that the sales were in fact illegal by the law of the place where they were made. Wilson v. Melvin, 13 Gray (Mass.) 73; Portsmouth, etc., Co. v. Smith, 155 Mass. 100, 28 N. E. 1130. The same burden which would have been upon the bankrupt, had he raised this defense, is upon the trustee. The only respect wherein these sales are contended to have been illegal is the alleged want of a sufficient license to the creditor to sell liquors under the laws of Massachusetts.

[2] As is not disputed, a license had been issued by the proper authorities for the city of Boston, in which city all the sales were made, to "Charles Bradley and Frank H. Adams as Ballantine Breweries Company." This license (whether sufficient or not in every respect) was in force during the time these sales were made, it was otherwise sufficient to prevent them from being regarded as illegal, and the only defect claimed to exist in it is that it does not license sales by the "Ballantine Breweries Company,"

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which is the creditor's corporate name. By Rev. Laws Mass. c. 100, § 1, no person is to sell intoxicating liquors except as authorized by license. Section 10 provides how licenses shall be granted. After providing in what cities and towns, and by whom, licenses may be granted, and how every license shall be signed, and for recording it, the section directs: "It shall name the person licensed." There are no further directions as to the form or manner in which such person shall be named. Annexed to the petition for review is a copy corresponding in every respect, except the dates, to the license or licenses here in question, which may be referred to.

A statement of facts agreed by the parties at the hearing before me may also be referred to. From this it appears that the creditor had done business for several years, under its name of Ballantine Breweries Company, at a place of business leased by it in its name, that Charles Bradley, above mentioned, was its president, and Frank H. Adams an employé. The finding of the referee that it is the custom of the licensing board for Boston to insert in its licenses to corporations the names of two or three individuals, with whom it may more conveniently deal as persons, and to whom it may send notices, is not disputed; and, there being no question that the license correctly describes the premises in which the licensed business was to be carried on, there is no dispute that the premises belonged to or were controlled by the Ballantine Breweries Company, and no one else.

I am unable to believe that these facts require me to find that the business carried on by this creditor, in the course of which these sales were made, was being illegally carried on for want of a sufficient license. The license certainly names the creditor corporation. If it also names Bradley and Adams, it does not so name them as to indicate that they, or either of them, were licensed to sell liquor independently of the Ballantine Breweries Company. In connection with the facts agreed, it would be possible to read the quoted words in which the licensee is named in a variety of ways, but not, as it seems to me, in any such way as to indicate that any one independent of or not connected with the creditor corporation was being licensed. In Connecticut Breweries Co. v. Murphy, 81 Conn. 145, 70 Atl. 450, the license did not, as the referee points out, purport to license the corporation which made the sale in any form of words. The person whom it did name could be connected with that corporation only by extrinsic evidence.

The order of the referee allowing the claim is approved and affirmed.

Joseph B. Jacobs (Jacobs & Jacobs, on the brief), for appellant.
James R. Murphy, for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

PER CURIAM. We find no error in the judgment of the District Court, and are satisfied with the reasoning and conclusion of the District Judge.

The judgment of the District Court is affirmed, and the appellee recovers costs in this court.

---

In re JEREMIAH SMITH & SONS, Inc.†

Appeal of O'NEILL.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 2.

1. SHIPPING (§ 208*)—LIMITATION OF LIABILITY—"PRIVITY" OR "KNOWLEDGE" OF CORPORATION.

The knowledge or privity of the managing officer or agent of a corporation is the knowledge or privity of the corporation within the mean-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied.